AMERICAN ARBITRATION ASSOCIATION

| CIT FINANCIAL USA, INC. D/B/A/ LEASE FINANCE GROUP and LEASE FINANCE GROUP, LLC<br><br>Claimants,<br><br>VS.<br><br>TRUETT (BUCK) HUX III<br><br>Respondent. | ARBITRATION NO. __________ AAA |
|---|---|

## DEMAND FOR ARBITRATION

Pursuant to AAA Rule 4(a)(i), CIT Financial USA, Inc. d/b/a Lease Finance Group ("CIT") and Lease Finance Group, LLC ("Lease Finance") (collectively, the "Claimants") in the above-captioned matter, file this Demand for Arbitration against Truett (Buck) Hux III (hereafter "Respondent") pursuant to the parties' contractual Arbitration Clause. A Form Demand for Arbitration (Exhibit 1) and a copy of the parties' Arbitration Clause (Exhibit 2) are attached pursuant to AAA Rule 4(a)(ii).

## I.
## BACKGROUND

1. This dispute arises out of Respondent Hux's written lease and failure to pay for credit card processing equipment from CIT and Lease Finance. ("Lease Agreement," Exhibit 2). That Lease Agreement contains a valid and enforceable arbitration agreement, as well as a mandatory forum selection clause for arbitration in Chicago, Illinois. That arbitration agreement provides:

> Any unsettled claims or controversy, including any contract or tort claim between or among us, you or any Guarantor related to this Lease, shall be determined by binding arbitration under to Commercial Arbitration Rules of the American Arbitration

> Association or if you choose, the Rules of Arbitration (Binding) of the Better Business Bureau.... Any arbitration shall take place in Chicago, Illinois.

(Exhibit 2). Respondent admittedly received the credit card processing equipment from Claimants, kept and paid for that equipment for almost a year, and then failed to properly return the equipment or to perform his obligations or pay for that equipment under the Lease Agreement. (Correspondence, Exhibit 3). Currently, Respondent has made eight (8) lease payments of $49.00 under the Lease Agreement, before finally defaulting in August, 2006, leaving forty (40) payments left under the Agreement. Under the terms of the Lease Agreement, those payments accelerate to a total amount of $1,960.00, plus applicable interest.

2. Claimants made several demands for payment under the Lease Agreement, after being refused Claimants turned Respondent over for collection, and reported default under the Lease Agreement to a credit reporting agency. Thereafter Respondent filed suit in Comal County, Texas, alleging causes of action for defamation, libel *per se*, defamation *per se*, business disparagement and seeking other injunctive and equitable relief relating to his refusal to perform according to the Lease Agreement. (Original Petition, Exhibit 4).

3. That suit is clearly in violation of the Parties' arbitration agreement, and Claimants promptly removed the proceeding to the United States District Court for the Western District of Texas where Claimants have also moved to compel arbitration and to stay that proceeding pending the completion of this arbitration. (Motion to Compel Arbitration, Exhibit 5).

4. All of Respondent's potential claims against the Claimants arise directly out of, or relate to, the Lease Agreement, to Respondent's failure to pay under the Agreement and to Claimants' subsequent attempts to collect monies owed under the Agreement. Therefore,

Claimants request the arbitrator to determine the Parties' respective rights and obligations under the Lease Agreement and all other attendant claims and controversies between the Parties.

## II.
## CLAIMS FOR RELIEF

### A. Breach of Contract

5. The Lease Agreement is a valid contract, signed and affirmed by the Parties. (Exhibit 2).

6. Claimants performed under the Lease Agreement by providing credit card processing equipment to Respondent at the determined address.

7. Respondent breached the Lease Agreement by refusing to accept and pay for the credit card processing equipment.

8. Claimants are entitled to all amounts due and owing under the Lease Agreement, currently totaling at $1,960.00, plus interest.

### B. Declaratory Judgment

9. Respondent makes claims for defamation, libel *per se*, defamation *per se*, business disparagement and other injunctive and equitable relief relating to his refusal to pay according to the Lease Agreement (Exhibit 4).

10. Claimants were rightly entitled to report Respondent to a credit agency because of his failure to pay as required by the Lease Agreement.

11. Therefore, Claimants seek a declaration that they are not liable to Respondent for defamation, libel *per se*, defamation *per se*, business disparagement or any other cause of action arising out of the Lease Agreement and/or that Respondent's damages claims are barred, in whole or in part, under the Lease Agreement.

## C. Attorney's Fees and Costs Are Improper in this Proceeding

12. Claimants specifically do not request attorney's fees or costs in this proceeding, nor under either applicable law or AAA Rule 43(d)(ii)[1] are such fees or costs proper.

## III.
## CONCLUSION

Claimants CIT and Lease Finance demand an award against Respondent Hux for:

- $ 1,960.00 plus interest as amounts due and owing under the Lease Agreement.
- A declaration that Claimants are not liable to Respondent for any alleged damages for defamation, libel *per se*, defamation *per se*, business disparagement and other injunctive and equitable relief relating to his refusal to pay according to the Lease Agreement.
- Any other relief to which the arbitrator determines that Claimant may be justly entitled.

Respectfully submitted,

BEIRNE, MAYNARD & PARSONS, L.L.P.

By: ______________________
Wm. Bruce Stanfill
Texas Bar No.: 19034350
1300 Post Oak Boulevard
Suite 2500
Houston, Texas 77056-3000
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY FOR CLAIMANTS CIT FINANCIAL USA, INC. D/B/A/ LEASE FINANCE GROUP AND LEASE FINANCE GROUP, LLC**

[1] That Rule provides that "[t]he award of the arbitrator(s) [may include] an award of attorneys' fees if (1) all parties have requested such an award or (2) it is authorized by law or (3) their arbitration agreement."

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing instrument was delivered to the undersigned counsel via facsimile and certified mail, return receipt requested on this 16th day of February 2007.

Steven W. Comte, Esq.
MAYO MENDOLIA & STARR, LLP
One American Center
909 ESE Loop 323, Suite 500
Tyler Texas, 75701

Wm. Bruce Stanfill



## COMMERCIAL ARBITRATION RULES
## DEMAND FOR ARBITRATION

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐
*There is no additional administrative fee for this service.*

| Respondent | | | Representative | | |
|---|---|---|---|---|---|
| Name of Respondent: Truett (Buck) Hux III | | | Name of Representative (if known): Steven W. Comte | | |
| Address: 490 Lane Oak Rd. | | | Name of Firm (if applicable): Mayo Mendolia & Starr, LLP | | |
| | | | Representative's Address: One American Center, 909 ESE Loop 323, Suite 550 | | |
| City: New Braunfels | State: TX | Zip Code: 78132- | City: Tyler | State: TX | Zip Code: 75701- |
| Phone No.: 903 316 0600 | Fax No.: | | Phone No.: 903 534 0200 | Fax No.: 903 534 0511 | |
| Email Address: | | | Email Address: scomte@suddenlinkmail.com | | |

The named claimant, a party to an arbitration agreement dated January 11, 2005, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE
- Equipment finance lease

Dollar Amount of Claim: $2,000.00

Other Relief Sought: ☐ Attorneys Fees ☒ Interest ☐ Arbitration Costs ☐ Punitive/ Exemplary ☒ Other Declaratory

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $750.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Commercial legal expertise.

Hearing locale Chicago, Illinois (check one) ☐ Requested by Claimant ☒ Locale provision included in the contract

Estimated time needed for hearings overall: 5 hours or ____ days

Type of Business: Claimant Credit Card Processing
Respondent Retail Sales

Is this a dispute between a business and a consumer? ☐Yes ☒ No Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA ☒ Dallas, TX ☐ East Providence, RI ☐ Fresno, CA ☐ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Claimant | | | Representative | | |
|---|---|---|---|---|---|
| Signature (may be signed by a representative): [signature] Date: 2/16/07 | | | Name of Representative: Wm. Bruce Stanfill | | |
| Name of Claimant: CIT Financial USA, Inc. and Lease Finance Group, LLC | | | Name of Firm (if applicable): Beirne, Maynard & Parsons | | |
| Address (to be used in connection with this case): C/O Joseph I. Sussman 132 W. 31st Street, Suite 1320 | | | Representative's Address: 1300 Post Oak Blvd. 25th Floor | | |
| City: New York | State: NY | Zip Code: 10001- | City: Houston | State: TX | Zip Code: 77056- |
| Phone No.: (212) 457-8590 | Fax No.: (212) 947-4967 | | Phone No.: 713 623 0887 | Fax No.: 713 960 1527 | |
| Email Address: joseph@sussmanlaw.com | | | Email Address: wstanfill@bmpllp.com | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879



(Page 1 of 8)

L #-1207901

~~44669118~~

CIT

# NON-CANCELLABLE LEASE

CIT FINANCIAL USA, Inc. d/b/a Lease Finance Group
233 N. Michigan Ave., Suite 1800
Chicago, IL 60601-5519 • (312) 980-5800 • Fax (312) 980-5780

| | | | |
|---|---|---|---|
| ☑ CORPORATION ☐ PROPRIETORSHIP ☐ PARTNERSHIP | REP CODE: COCI | OFFICE NUMBER | LEASE NUMBER: 210117 |
| LEGAL NAME OF LESSEE ("LESSEE"): Truett Hux III | TYPE OF BUSINESS | VENDOR: EFS National Bank | |
| BILLING ADDRESS: P.O. Box 1981 | | ADDRESS: 2525 Horizon Lake Road | |
| CITY: Whitehouse | STATE: TX / ZIP: 75791 | CITY: Memphis | STATE: TN / ZIP: 38134 |
| LESSEE PHONE NO: (903) 839-0987 | COUNTY: Smith / YEARS IN BUSINESS: 12 | PHONE NO.: 800-238-7875 | MERCHANT NUMBER |

| EQUIPMENT MANUFACTURER | MODEL | SERIAL NUMBER |
|---|---|---|
| Eclipse | CL/IPSE | |
| VERIFONE 1000 SE | IN/GENC | |

LOCATION OF Equipment Address (no. & street, city, state, zip) if different from above: 1110 Hwy 110 North Whitehouse Tx 75791

The equipment ("Equipment") and the software ("Software") described above shall be referred to collectively as the "Property".

| SCHEDULE OF PAYMENTS | | PAYABLE AT SIGNING OF THE LEASE | |
|---|---|---|---|
| TERM IN MONTHS: 48 | BASE MONTHLY PAYMENT OF $ 49.00 PER MONTH | ☐ FIRST AND LAST MONTHLY PAYMENT | $ — |
| COMMENCEMENT DATE | PLUS TAXES AND OTHER FEES AS DESCRIBED IN THE TERMS AND CONDITIONS BELOW | ☐ FIRST MONTHLY PAYMENT | $ — |
| | | ☐ OTHER | $ — |
| | | TOTAL | $ — |

**TERMS AND CONDITIONS** (See other side for additional Terms and Conditions)

1. NOTWITHSTANDING ANY AMOUNTS WHICH MAY BE PAID BY LESSOR TO VENDOR OR ANY AGENT OF VENDOR, LESSEE UNDERSTANDS AND AGREES THAT NEITHER VENDOR NOR ANY AGENT OF VENDOR IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE. THEIR REPRESENTATIONS SHALL IN NO WAY AFFECT LESSEE OR LESSOR'S RIGHTS AND OBLIGATIONS AS HEREIN SET FORTH.

2. **NON-CANCELLABLE LEASE. THIS LEASE CANNOT BE CANCELLED BY LESSEE DURING THE TERM HEREOF.**

3. **DISCLOSURE OF INFORMATION.** Lessee and Guarantor(s) expressly authorize Lessor or its agents or assigns continuing authority to conduct credit checks and background investigations concerning Lessee and Guarantor(s) and has the right to report late payments and defaults to credit agencies as deemed appropriate by Lessor. Disputes or inaccuracies regarding information sent to credit agencies should be sent to CIT FINANCIAL USA, Inc. d/b/a Lease Finance Group at the address on the top of this lease.

4. **AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL OF PAYMENTS.** I, the undersigned Lessee in the capacity set forth below, hereby authorize CIT FINANCIAL USA, Inc. d/b/a Lease Finance Group or its designee, successor or assign (hereinafter "Lessor") to automatically withdraw my monthly rental payment and any amounts, including any and all taxes or other charges now due or hereinafter imposed, owed in conjunction with the above referenced Non-Cancellable Lease (hereinafter "Lease") by initiating debit entries to my account at the financial institution (hereinafter "Bank") evidenced on the check copy provided, or such other Bank that may be used by me from time to time. As set forth in paragraph 16, in the event of default of my obligations hereunder, I authorize the Lessor to debit my account for the full amount due under the Lease. A rental payment (whether paid by debit or other means) that is not honored by my bank for any reason will be subject to a $10.00 service fee imposed by Lessor, the amount of which may be debited from my account. Further, I authorize my Bank to accept and to charge any debit entries initiated by Lessor to my account. This authorization is to remain in full force and effect until Lessor has received written notice from me of its termination in such time and in such manner as to afford Lessor a reasonable opportunity to act.

BANK Southside Bank ROUTING NO. 111923607 ACCOUNT NO. 1464779

**CERTIFICATE OF ACKNOWLEDGMENT AND ACCEPTANCE OF LEASED PROPERTY**

I HAVE READ AND AGREE TO THE TERMS WHICH APPEAR ON BOTH SIDES OF THIS LEASE DOCUMENT. Lessee represents that **this Property is being leased for business and/or professional purposes and agree that under no circumstances shall this Lease be construed as a consumer contract.** Lessee acknowledges receipt of a copy of this Lease Agreement, with all lease terms filled in, and acknowledge and agree that Lessee shall be deemed to have unconditionally accepted the Property Lessor has leased Lessee under the Lease Agreement, particulars of which are given above. Lessee's signature herein authorizes Lessor to verbally verify by telephone with representative of Lessee on a verification certificate; the date and time of such verification; the terms and conditions of the Lease; the type and make of the Property under the Lease; that all necessary installation has been completed and the Property is in good operating order and in all respects satisfactory to Lessee; and that the monthly rental payment will be automatically debited from the Lessee's verified account number and designated account.

ACCEPTED BY LESSOR:
CIT FINANCIAL USA, Inc.
d/b/a Lease Finance Group
Authorized Signature [signature]
Title [signature] Date 3/15/05

ACCEPTED BY LESSEE: ____________________
LESSEE (FULL LEGAL NAME)

LESSEE #1
X Signature [signature]
Print Name Truett Hux III
Title President Date 1/11/06
Witness Signature X

LESSEE #2 (if applicable)
X Signature
Print Name
Title ________ Date

**PERSONAL GUARANTY**

To induce Lessor to enter into this Lease, the undersigned unconditionally guarantees to Lessor the prompt payment when due of all of Lessee's obligations to Lessor under the Lease. Lessor shall not be required to proceed against Lessee or the Property or enforce any other remedy before proceeding against the undersigned. The undersigned agrees to pay all attorney's fees and other expenses incurred by Lessor by reason of default by the Lessee or the undersigned consents to any extensions or modifications granted to Lessee and the release and/or compromise of any obligation of Lessee or any other obligors and guarantors without in any way releasing the undersigned from its obligations hereunder. This is a continuing Guaranty and shall not be discharged or affected by death of the undersigned, shall bind the heirs, administrators, representatives, successors and assigns, and may be enforced by or for the benefit of any assignee or successor of Lessor. The undersigned agrees and consents the Court of the State of Illinois having jurisdiction in Cook County or any Federal District Court having jurisdiction in said county shall have jurisdiction and shall be the proper venue for the determination of all controversies and disputes arising hereunder. The undersigned agrees and consents that the service of process by registered or certified mail will be sufficient to obtain jurisdiction.

*Guarantor Signature*
X [signature], Individual
(No title allowed)
Home Address 490 Lone Oak Rd.
City New Braunfels State TX Zip 78132
Home Phone# (903) 316-0600 S.S.# 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

*Guarantor Signature #2*
X ____________________, Individual
(No title allowed)
Home Address
City State Zip
Home Phone# S.S.#

We have written this Lease in plain language because we want you to fully understand its terms. Please read your copy of this Lease carefully and feel free to ask us any questions you may have about it. We use the words you and your to mean the Lessee indicated above. The words we, us, and our refer to the Lessor indicated above and any assignee thereof.

G-S 0404A EFS WHITE - ORIGINAL YELLOW - FILE PINK - LESSEE COPY

EXHIBIT 2

5. NO WARRANTIES. The Property is subject to any warranties made by the manufacturer of the Equipment or licensor of the Software ("Licensor") and any limitation thereof. The Property is leased "AS IS" and LESSOR IS NOT LIABLE FOR THE PERFORMANCE OF THE EQUIPMENT, THE SOFTWARE, THE LICENSOR OR ANY OTHER PARTY'S FAILURE TO PROVIDE SERVICE. YOU ACKNOWLEDGE THAT WE DID NOT MANUFACTURE OR LICENSE THE PROPERTY NOR DID WE SELECT IT. WE DID NOT REPRESENT THE MANUFACTURER OR THE LICENSOR AND YOU SELECTED THE PROPERTY BASED UPON YOUR OWN JUDGEMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. YOU AGREE THAT, REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR, AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR, ANY DAMAGES, WHETHER LOST PROFITS, LOST DATA, CONSEQUENTIAL, DIRECT, SPECIAL, PUNITIVE OR INDIRECT, RELATING TO THE PROPERTY. YOU AGREE THAT IN THE EVENT OF A BREACH OR DEFAULT UNDER THE LICENSE AGREEMENT, LESSEE'S SOLE REMEDY SHALL BE AGAINST THE LICENSOR. We hereby notify you that you may have rights under the supply contracts or the License Agreement, and that you may contact the supplier or the Licensor for a description of those rights or any warranties.

6. TERM AND RENT. The Lease term shall commence as of the date that the Lease is accepted by us, ("the Commencement Date"), and shall continue until your obligations under the Lease shall have been fully performed. Each installment of rent shall be payable monthly in advance, the first such payment being due on the date you sign this Lease, or at such later time as agreed to by us, and the second payment shall be due the following month on the day of the month we designate in writing (hereinafter "Payment Day"), and subsequent payments will be due on the Payment Day of each successive month until the balance of the rent and any additional rent or fees chargeable to you under this Lease have been paid in full. All payments of rent shall be made to us at the address set forth herein or such other address that we may designate in writing. YOUR OBLIGATION TO PAY SUCH RENTALS SHALL BE ABSOLUTE AND UNCONDITIONAL AND IS NOT SUBJECT TO ANY ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER, INCLUDING ANY ACTION BY LICENSOR OR ANY OTHER THIRD PARTY. You hereby authorize us to insert the serial numbers and other identification data of the Property when determined by us and dates or other omitted factual matters. If a security deposit is indicated above, the same shall be held by us to secure the faithful performance of the terms of the Lease and returned or applied in accordance with Paragraph 18 hereof.

7. ASSIGNMENT. (a) WE MAY ASSIGN OR TRANSFER THIS LEASE OR OUR INTEREST IN THE PROPERTY WITHOUT NOTICE TO YOU. Any assignee of ours shall have all of the rights, but none of the obligations, of ours under this Lease and you agree that you will not assert against any assignee of ours any defense, counterclaim or offset that you may have against us. (b) YOU SHALL NOT ASSIGN OR IN ANY WAY DISPOSE OF ALL OR ANY PART OF YOUR RIGHTS OR OBLIGATIONS UNDER THIS LEASE OR ENTER INTO ANY SUBLEASE OF ALL OR ANY PART OF THE PROPERTY WITHOUT OUR PRIOR WRITTEN CONSENT.

8. TITLE, QUIET ENJOYMENT. We shall at all times retain title to the Property. All documents of title and evidence of delivery shall be delivered to us. You hereby authorize us, at your expense, to cause this Lease, or any statement or other instrument in respect to this Lease showing our interest in the Property, including Uniform Commercial Code Financing Statements, to be filed or recorded and refiled and rerecorded, and grant us the right to execute your name thereto. You agree to execute and deliver any statement or instrument requested by us for such purpose, and agree to pay or reimburse us for any filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. So long as you are not in default under any of the terms in this Lease, we agree that we shall not interfere with your quiet use and enjoyment of the Property.

9. CARE, USE AND LOCATION. You shall maintain the Equipment in good operating condition, repair and appearance, and protect the same from deterioration other than normal wear and tear; shall use the Property in the regular course of your business; shall not make any modification, alteration or addition to the Property without our written consent, which shall not be unreasonably with-held; shall not so affix the Equipment to realty as to change its nature to real property; and shall not remove the Property from the location shown herein without our written consent, which shall not be unreasonably withheld.

10. NET LEASE: TAXES. You intend the rental payments hereunder to be net to us, and you agree to pay all sales, use, excise, personal property, stamp, documentary and ad valorem taxes, license and registration fees, assessments, fines, penalties and similar charges imposed on the ownership, possession or use of the Property during the term of this Lease (except our Federal or State net income taxes) imposed on you or us with respect to the rental payments hereunder or the ownership of the Property and shall reimburse us upon demand for any taxes paid by or advanced by us. Your monthly payments to us shall include, in addition to the base monthly payment for rental of the Property, an amount attributable to such taxes and fees. Such amount shall include, if applicable, an estimate of the property tax owing with respect to such period plus a processing fee to reimburse us for preparing, reviewing and filing tax returns. Unless otherwise agreed to in writing, we shall file personal property tax returns with respect to the Property.

11. INDEMNITY. You shall and do hereby agree to indemnify and save us, our agents, servants, successors, and assigns harmless from any and all liability, damage or loss, including reasonable attorney's fees, arising out of the ownership, selection, possession, leasing, operation, control, use, condition (including but not limited to latent and other defects, whether or not discoverable by you), maintenance, delivery and return of the Property. The indemnity shall continue in full force and effect notwithstanding the termination of the Lease.

12. INSURANCE. You shall keep the Property insured against all risks of loss or damage from any cause whatsoever for not less than the full replacement value thereof. You shall carry public liability insurance, both personal injury and property damage, covering the Property. All such insurance shall be in form and with companies satisfactory to us and shall name us and our assigns as loss payee as our interest may appear with respect to property damage coverage and as additional insured with respect to public liability coverage. You shall pay the premiums for such insurance and deliver to us satisfactory evidence of insurance coverage required hereunder. The proceeds of such insurance payable as a result of loss or damage to any item of Property shall be applied to satisfy your obligation as set forth in Paragraph 13 below. You hereby irrevocably appoint us as your attorney-in—fact to make a claim for, receive payment of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy.

13. RISK OF LOSS. You shall bear all risks of loss of and damage to the Property from any cause and the occurrence of such loss or damage shall not relieve you of any obligation hereunder.

14. INSURANCE NON-COMPLIANCE. In the event you fail to comply with your obligations under Paragraph 12 of this agreement to deliver to us evidence of insurance naming us as loss payee, or upon the cancellation or non-renewal of the required insurance, then you shall be subject to an Insurance Non-Compliance Charge in the amount of $2.50 per month, per item of Equipment, said amount to be paid with the next monthly rental payment and all subsequent payments due during the remaining term of the Lease, or until such time as satisfactory evidence of insurance coverage has been provided. The imposition of the Insurance Non-Compliance Charge shall not relieve you of any obligation under Paragraph 13 of this agreement.

15. EVENT OF DEFAULT. If any one of the following events (each a "Default") shall occur, then to the extent permitted by applicable law, we shall have the right to exercise any one or more remedies set forth in Paragraph 16 below. (a) you fail to pay any rental or any other payment hereunder when due; or (b) you fail to perform any of the terms, covenants, or conditions of this Lease other than as provided above after ten (10) days written notice.

16. REMEDIES. If a Default occurs, we may do any or all of the following: (a) terminate this Lease; (b) declare all unpaid Lease payments until the end of the term of this Lease and other amounts under this Lease immediately due and payable; (c) repossess or render unusable, any Property wherever located, without demand or notice, without any court order or other process of law and without liability to you for any damages occasioned by such action; (d) require you to deliver the Property to a location designated by us; (e) proceed by court action to enforce performance by you of this Lease and/or recover all damages and expenses incurred by us by reason of any Default; or (f) exercise any other right or remedy available at law or in equity, including those of a secured creditor. You shall pay us all costs and expenses (including attorney's fees and costs) incurred by us in enforcing any of the terms of this Lease or any of our rights against you. Upon repossession or surrender of any Property we may lease, sell or otherwise dispose of the Property, and apply the net proceeds thereof to the amounts owed to us hereunder, provided, that you shall remain liable to us for any deficiency. You agree that it is commercially reasonable for repossessed Property to be sold at public or private sales (in any state or county selected by us) to dealers of others in lots or pieces (with or without the Property being physically present) at used Property prices. Notwithstanding the foregoing, to the extent the Software is nontransferable or its transfer restricted, Lessee agrees that the Lessor and/or Licensor of the Software shall have no duty to remarket such Software or otherwise mitigate any damages relating to such Software. All rights and remedies are cumulative and may be enforced concurrently. Any delay or failure to enforce our rights hereunder does not prevent us from enforcing any rights at a later time. Notwithstanding the foregoing, any attorneys' fees, costs, or expenses, or costs or expenses of repossession and storage, shall be limited to the highest amount chargeable under applicable law.

17. CHANGE OF NAME, BILLING ADDRESS; BANK ACCOUNT. You will inform us, within ten (10) days, of any change in your name, address, billing address, telephone-numbers, location of Property, or the bank checking account used for ACH debit. We are authorized to correct any typographic or spelling errors made on the front of this Lease Agreement regarding your address, telephone numbers, bank checking account or the Property leased.

18. END OF LEASE TERM. At the expiration or earlier termination of this Lease Term, you have the following options: (a) You shall disconnect and return the Equipment and/or Software, freight prepaid, to us in good repair, condition and working order, in a manner and to a location we designate and all Lessee's right to use the Software shall terminate. (b) Lessor extends an option to purchase the Equipment at the end of the term for fair market value, which is estimated to be 10% of the Lease Term times monthly Lease payment (including taxes) and return the Software in accordance with option a. (c) You can extend upon all the terms and conditions as stated herein for a period of one month from its expiration date without the necessity of the execution of any further instrument or document. At the end of this additional month, options a, b, and c are again available to you. Unless you notify us in writing 30 days prior to the expiration of the Lease Term, or monthly renewal period, you shall have been deemed to have chosen option c (Automatic Renewal for one month).

19. LATE PAYMENTS AND COLLECTION COSTS. If you do not make a payment within 10 days of its due date, you must pay, in addition to the payment, a late charge of $10.00 for each late payment. Each month the past due payment remains unpaid, an additional late fee of $10.00 will be assessed. You will pay our collection costs, and reasonable Attorney's fees. Such collection costs include, but are not limited to charges for collection letters and collection calls and to charges of collection agencies, courts sheriffs, etc. There will be a processing charge of $10.00 for any rejected credit card charge, Western Union Phone Pay or other payment method used by us. Payments are applied to late fees and to processing charges first and then to Lease obligations.

20. MISCELLANEOUS. In the event you fail to comply with any provision of the Lease, we shall have the right, but not be obligated, to effect such compliance on your behalf. All monies expended by us in effecting such compliance shall be deemed to be additional rent, and shall be paid by you to us at the time of the next monthly payment or rent. All notices under this Lease shall be sufficient if given personally or mailed to the party intended at the respective address set forth herein, or at such other address as said party may provide in writing from time to time. We intend and you intend this Lease to be a valid and subsisting legal instrument, and agree that any provision of this Lease which may be deemed unenforceable shall be modified to the extent necessary to render it enforceable and shall in no way invalidate any other provision or provisions of this Lease, all of which shall remain in full force and effect. This Lease shall be binding when accepted in writing by us and shall be governed by the laws of the State of Illinois, without regard to the conflict of law rules or principles thereof. Unless otherwise prohibited by law you agree and consent that the Court of the State of Illinois having jurisdiction in Cook County or any Federal District Court having jurisdiction in Cook County shall have the jurisdiction and shall be the proper venue for the determination of all controversies and disputes arising hereunder. You agree and consent that service of process by registered or certified mail will be sufficient to obtain jurisdiction. Nothing contained herein is intended to preclude us from commencing any action hereunder in any court having jurisdiction thereof. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY IN ANY ACTION BETWEEN THE PARTIES.

21. CHOICE OF LAW: ARBITRATION: Any unsettled claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, shall be determined by binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association or if you choose, the Rules of Arbitration (Binding) of the Better Business Bureau. All statutes otherwise applicable shall apply. Judgment upon the arbitration award may be entered in any court having jurisdiction. In event you or Guarantor Defaults, these provisions regarding arbitration shall not apply to our right to repossess the Equipment. This Lease is made in interstate commerce. Any arbitration shall take place in Chicago, Illinois.

22. LIMITATION ON ACTION: You shall commence any action based in contract, tort or otherwise arising from, or related to, this Lease, or the subject matter thereof, within one year of the accrual of that cause of action and no such action may be maintained which is not commenced within that period.

23. ENTIRE AGREEMENT: CHANGES. This Lease contains the entire agreement between the parties and may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by one of our executive officers.





Lease Finance Group LLC
233 N. Michigan Ave., Suite 1800
Chicago, Illinois 60601
312.980.5600

December 12, 2006

Mayo Mendolia & Starr, L.L.P.
Steven Comte
One American Center
909 ESE Loop 323
Suite 550
Tyler, TX 75701



**Re: Truett Hux**
**Lease Number: 1287901 (001-0649066)**

Dear Mr. Comte:

This letter is in response to your letter address to Retriever Payment Systems received by Lease Finance Group LLC ("LFG") received December 11, 2006 regarding your client's lease arrangement with LFG.

The lease agreement with LFG covers equipment only. Your client entered into a separate agreement with Concord EFS for transaction processing services. LFG cannot answer for the actions, services or fees of the processing company, as we are separate entities and in no way affiliated with the processing company. Given that LFG and the processing company are separate and distinct entities, and there are two separate and unrelated agreements in place between you and LFG on the one hand and you and Retriever Payment Systems on the other. LFG has fulfilled all of its contractual obligations and provided you with fully operable equipment.

Section 1 of the lease agreement, which appears in all capitalized letters on the front of the lease agreement, clearly states as follows:

"NOTWITHSTANDING ANY AMOUNTS WHICH MAY BE PAID BY LESSOR TO VENDOR OR ANY AGENT OF VENDOR, LESSEE UNDERSTANDS AND AGREES THAT NEITHER VENDOR NOR ANY AGENT OF VENDOR IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE. THEIR REPRESENTATIONS SHALL IN NO WAY AFFECT LESSEE OR LESSOR'S RIGHTS AND OBLIGATIONS AS HEREIN SET FORTH."

Consequently, Concord EFS had no authority to make any representation to your client that contravened, waived or in any way altered the express terms of the lease agreement, all of which terms were clearly and unequivocally memorialized in the lease agreement at the time your client signed the lease agreement.

EXHIBIT 3

In addition to signing the lease agreement, your client also completed an installation report. At this time your client confirmed that he acknowledge and accepted the terms and conditions of the leasing agreement. A copy of the lease agreement and installation report is enclosed for your review. Your client further ratified the lease agreement by making several payments on the lease.

Pursuant to the terms and condition of the lease agreement we shall at all time retain title to the property. LFG's records indicate that we have not received your equipment at our location. Please be advised that your client shall not assign or in any way dispose of all or any part of his rights or obligations under this lease or enter into any sublease of all or any part of the property without our prior written consent. By refusing the equipment your client released the equipment to a third party, in direct violation of the lease agreement.

The lease agreement did not provide for unilateral termination by your client, and in fact expressly set forth the absolute and unconditional obligation of your client to make all payments due under the lease agreement no matter the circumstances.

Because of its severe delinquency, the account has been forwarded to an outside collection agency. If you have any further questions regarding this lease or to settle the balance, please contact Recovery Concepts (800) 931-9638.

Sincerely,

**Nicole Mikula**
**Lease Associate**

CAUSE NO. C2007-0001A

| | | |
|---|---|---|
| TRUETT (BUCK) HUX III | § | IN THE 22ND DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| CIT FINANCIAL USA, INC. D/B/A | § | |
| LEASE FINANCE GROUP and | § | |
| LEASE FINANCE GROUP, LLC | § | OF COMAL COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION,**
**REQUEST FOR EQUITABLE RELIEF,**
**& REQUEST FOR DISCLOSURE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Truett (Buck) Hux, III, Plaintiff in the above-entitled and numbered cause and files this his Original Petition and for cause of action would complain as follows:

### A. Discovery Control Plan

1. Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.3 because Plaintiff affirmatively pleads that Plaintiff seeks monetary relief aggregating more than $50,000 and Plaintiff affirmatively pleads that Plaintiff seeks injunctive relief.

### B. Parties

2. Plaintiff, Truett (Buck) Hux III, an individual, is a resident of Comal County, Texas.

3. Defendant, CIT Financial USA, Inc. d/b/a Lease Finance Group, a foreign corporation organized and existing under the laws of the State of Delaware, whose principal office is located at 1 CIT Drive, Linvingston, NJ 07039, is authorized to do business in Texas and may be



EXHIBIT 4

served with process by serving CT Corp System, 350 N. St. Paul St., Dallas, Texas 75201.

4. Defendant, Lease Finance Group LLC, a foreign limited liability company organized and existing under the laws of the State of Delaware, whose principal office is located at 132 W. 31st St., 14th Floor, New York, New York 10001 does not possess a certificate of authority from the State of Texas and may be served with process by serving the Texas Secretary of State's Citations Division by Certified Mail Return Receipt Requested at 1019 Brazos, Austin, Texas 78701.

## C. Jurisdiction

5. The court has jurisdiction over the lawsuit because the amount in controversy exceeds this court's minimum jurisdictional requirements.

6. The court has jurisdiction over defendant, CIT FINANCIAL USA, INC. d/b/a Lease Finance Group, a nonresident, because defendant purposefully availed itself of the privileges and benefits of conducting business in Texas by committing a tort, which is the subject of this suit, in whole or in part in Texas. Specifically, the Defendant committed the torts of defamation and business disparagement on or about July 1, 2006.

7. The court has jurisdiction over defendant, LEASE FINANCE GROUP LLC, a nonresident, because defendant purposefully availed itself of the privileges and benefits of conducting business in Texas by committing a tort, which is the subject of this suit, in whole or in part in Texas. Specifically, the Defendant committed the torts of defamation and business disparagement on or about July 1, 2006.

## D. Venue

8. Venue is mandatory in Comal County, Texas under Texas Civil Practice &

Remedies Code §15.017 because this suit involves libel and is filed in the county where the plaintiff resided when this claim accrued.

### E. Facts

9. On January 11, 2005, Plaintiff was approached by a representative of Defendant regarding an offer to lease equipment to be used for credit card service. On the same date, Plaintiff agreed to accept the service provided by Defendant *if and only if* Defendant provided the necessary equipment and service prior to January 22, 2005. Plaintiff's conditional acceptance was communicated directly to Defendant's representative. Defendant's representative assured Plaintiff that the equipment and service would in fact be provided prior to January 22, 2005. Relying upon the assurances of Defendant's representative, Plaintiff signed the Lease agreement on January 11, 2005.

10. Defendant failed to provide the requisite equipment and service by January 22, 2005. Consequently, Plaintiff communicated to Defendant's representative that the conditions of Plaintiff's acceptance had not been met and that Plaintiff would not accept or use the equipment or service to be provided by Defendant under the proposed lease. Despite Plaintiff's refusal of the equipment and service, Defendant shipped the equipment to Plaintiff. DHL attempted to deliver the equipment to Plaintiff, but Plaintiff refused delivery from DHL and signed the necessary paperwork evidencing his refusal. DHL returned the equipment to Defendant.

11. Defendant disregarded Plaintiff's refusal and return of the equipment and began to charge Plaintiff for services provided under the purported lease. Plaintiff refused to pay for the services, asserting that the lease was not an enforceable contract. As a result of Plaintiff's

nonpayment, Defendant began sending collection notices to Plaintiff.

12. On or about July 1, 2006, Defendant notified credit reporting agencies that Plaintiff owed Defendant money and that Defendant had submitted plaintiff's account for collection. As a result, a notice of collection was added to Plaintiff's credit reports.

13. Plaintiff did not become aware of Defendant's defamatory statements until October 23, 2006.

14. Plaintiff had applied for multiple loans or lines of credit to purchase property in Comal County, Texas. As a result of the collection shown on Plaintiff's credit reports, Plaintiff was unable to obtain suitable financing for the purchase of the properties in Comal County. Plaintiff could have obtained suitable financing for the properties if not for the collection shown on his credit reports.

15. As a consequence of Defendant's actions, Plaintiff has suffered irreparable harm to his reputation and his economic interests.

**F. <u>Defamation</u>**

16. Defendant published a statement by written communication to credit reporting agencies asserting as fact that Plaintiff owed Defendant money.

17. The statement involved a private matter, Plaintiff's credit rating.

18. The statement referred to Plaintiff by name because the collection was reported on Plaintiff's personal credit report.

19. The statement was defamatory because it unambiguously asserts that Plaintiff has not paid monies allegedly owed to Defendant, thereby damaging Plaintiff's reputation and exposing

Plaintiff to financial injury.

20. Defendant is strictly liable to Plaintiff for the defamation because Plaintiff is a private party, the Defendant is a non-media defendant, and the statement concerns a private matter. Furthermore, Defendant's conduct was willful and malicious.

21. Plaintiff seeks unliquidated damages within the jurisdictional limits of this court, which include, but are not limited to:

(i) loss of earning capacity;

(ii) loss of past income;

(iii) loss of future income;

(iv) damage to reputation;

(v) damage to credit rating;

(vi) loss of credit.

22. Plaintiff's injury resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code Section 41.003(a).

## G. <u>Libel Per Se</u>

23. Defendant's written statement described in paragraphs 16 through 22 above was libel per se as defined by Texas Civil Practice & Remedies Code Section 73.001. Defendant's statement injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, or financial injury. Specifically, Defendant falsely stated to credit reporting agencies that Plaintiff had not paid monies allegedly owed to Defendant causing the Plaintiff to be exposed to contempt, ridicule, or financial injury.

### H. Defamation Per Se

24. Defendant's written statement described in paragraphs 16 through 22 above was defamatory per se under the common law. Defendant's statement injured Plaintiff in Plaintiff's profession or occupation by preventing investment opportunities and potential profits from investment opportunities.

### I. Business Disparagement

25. In the addition to the foregoing causes of action, Defendant disparaged Plaintiff's business.

26. Defendant published written disparaging words about Plaintiff's consumer credit worthiness by notifying credit agencies that Plaintiff had not paid monies allegedly owed to Defendant.

27. The words were false because Plaintiff did not owe Defendant money.

28. Defendant published the words with malice because Defendant knew that the statement was false, acted with ill will, and acted with the intent to interfere in the Plaintiff's economic interests.

29. Defendant published the disparaging statement without privilege.

30. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court, which include but are not limited to:

(i) Loss of earning capacity;

(ii) Loss of past income;

(iii) Loss of future income;

(iv) Damage to business reputation;

(v) Damage to credit rating;

(vi) Loss of credit.

31. Plaintiff's injury resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code Section 41.003(a).

**J. Vicarious Liability**

32. The defamatory statements at issue were made by an individual who was an employee, agent, or representative of Defendant. The individual made the statements in order to further the business of the Defendant and to accomplish the objective for which the employee was hired. The statements were made within the course and scope of the employment, agency, or representation of Defendant.

**K. Equitable Relief**

33. Plaintiff seeks equitable relief in the form of notification to credit agencies that the notice of collection shown on Plaintiff's credit reports is erroneous. By reporting an erroneous collection on Plaintiff's credit reports, Defendant continually causes Plaintiff damage to which a monetary value cannot be assessed.

**L. Jury Demand**

34. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

**M. Request for Disclosure**

35. Under Texas Rule of Civil Procedure 194, Plaintiff requests that Defendant disclose within 50 days of the service of this request, the information or material described in Rule 194.2.

## N. Prayer

36. For these reasons, Plaintiff asks that the Court issue citation for defendant to appear and answer, and the Plaintiff be awarded a judgment against Defendant for the following:

(a) Actual damages;

(b) Equitable Relief in the form of notification to credit agencies that the notice of collection shown on Plaintiff's credit report is erroneous;

(c) Exemplary damages;

(d) Loss of earning capacity;

(e) Loss of past income;

(f) Loss of future income;

(g) Damage to business reputation;

(h) Damage to personal reputation;

(i) Damage to credit rating;

(j) Loss of credit;

(k) Prejudgment and postjudgment interest;

(l) Court costs; and

(m) All other relief to which Plaintiff is entitled.

Respectfully submitted,

**MAYO MENDOLIA & STARR, L.L.P.**
909 ESE Loop 323, Suite 550
Tyler, Texas 75701
(903) 534-0200
(903) 534-0511 (Fax)

By: ______________________
**J. KEITH MAYO**
State Bar No. 00794251
**STEVEN W. COMTE**
State Bar No. 24040715

ATTORNEYS FOR PLAINTIFF
**TRUETT (BUCK) HUX III**

Comal County
Office of District Clerk
150 N. Seguin, Suite 304
New Braunfels, Texas 78130-5160




7005 1160 0002 0095 9674

C.T. CORP. SYSTEM
350 N. ST PAUL ST
DALLAS, TX 75201

75201$4240 C005